UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TRETHEWEY,

      Plaintiff,

      v.

SHAWN STIMAC, JOSEPH JONES,
THOMAS VAUGHN, and JEFFREY
BINNS

      Defendants.
_____/

CASE NO. 2:08-CV-12156
CHIEF JUDGE GERALD E. ROSEN
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION on: (1) DEFENDANT BINNS'S MOTION (Docket #59), (2) DEFENDANT STIMAC'S MOTION (Docket # 67), and (3) DEFENDANTS JONES'S AND VAUGHN'S MOTION (Docket #66)**

*Table of Contents*

I.    RECOMMENDATION……………………………………………………………1
II.   REPORT……………………………………………………………………………2
    A.   *Procedural Background*…………………………………………………2
    B.   *Factual Background*……………………………………………………..3
    C.   *Standard of Review for Summary Judgment*……………………………..6
    D.   *Plaintiff's Excessive Force Claim*………………………………………..7
        1.    *Legal Standard*……………………………………………….....7
        2.    *Whether Defendants Binns and Stimac used Excessive Force*…….. 8
        3.    *Whether Defendant Stimac has Qualified Immunity*………………..11
    E.   *Plaintiff's State Law Claims – Whether Defendant Stimac has Governmental Immunity*..............................................................................14
    F.   *Plaintiff's State Law Claims – Supplemental Jurisdiction*………………….17
    G.   *Conclusion*…………………………………………………………………18
III.  NOTICE TO PARTIES REGARDING OBJECTIONS……………………………18

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should deny defendant Binns's and defendant Stimac's motions for summary judgment pursuant to FED. R. CIV. P. 56(c). Additionally, the Court should deny defendants Jones's and Vaughn's motion to dismiss.

1

II.  REPORT:

A.  *Procedural Background*

Plaintiff Michael Trethewey commenced this action on May 19, 2008, pursuant to 42 U.S.C. § 1983 alleging that defendants Shawn Stimac, Joseph Jones, Thomas Vaughn, and Jeffrey Binns violated his Fourth Amendment rights and committed assault and/or battery. Plaintiff also claims that defendants' actions were grossly negligent. Specifically, plaintiff alleges that his arrest, by defendants, for parole violations on June 13, 2007, was carried out with excessive force. Defendants Jones and Vaughn are officers employed by the State of Michigan as State Police Troopers. Defendant Binns is also employed by the State of Michigan as a correctional officer assigned to the Parole Absconder Recovery Unit. Defendant Stimac is employed by the City of Flint as a police officer. All four officers continue to be employed in those particular capacities. On October 14, 2009, defendant Binns filed a motion for summary judgment on the merits pursuant to FED. R. CIV. P. 56(c). Defendant Binns contends that plaintiff is unable to establish a genuine issue of material fact with respect to whether he violated plaintiff's rights under the Fourth Amendment, committed assault and/or battery, and was grossly negligent. Plaintiff filed a response to defendant's motion on December 13, 2009. On February 26, 2010, defendant Stimac filed a motion for summary judgment. Defendant Stimac similarly contends that plaintiff is unable to establish a genuine issue of material fact, while asserting additional qualified immunity and governmental immunity defenses. Plaintiff filed his response to defendant Stimac's motion on April 3, 2010. Defendants Jones and Vaughn filed their motion to dismiss the state law charges of assault and battery on February 26, 2010. Defendants Jones and Vaughn assert in their motion that the Court should not exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff responded to this motion on

April 12, 2010. The Court referred the matter to me for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

B.  *Factual Background*

Plaintiff's complaint alleges the following facts. In December 2003, plaintiff was sentenced to a period of incarceration after pleading guilty to the charge of Attempted Larceny by Conversion. Two years later, plaintiff was released on parole. Because plaintiff failed to contact his parole officer as required, he was placed on absconder status, a technical violation. On January 19, 2007, defendant Binns picked up plaintiff on the absconder warrant. This arrest was not without difficulty as plaintiff resisted attempts to take him into custody. Ultimately, defendant Binns was able to successfully subdue plaintiff and take him to prison. Plaintiff was later released on parole for a second time. Plaintiff once again failed to report to his parole officer and was returned to absconder status. On June 13, 2007, the four defendants gathered to take plaintiff into custody for his parole violation. Defendants Stimac, Jones, and Binns were in plainclothes and driving unmarked vehicles, while defendant Vaughn was wearing a uniform and driving a marked car. *See* Pl.'s Second Amended Complaint, ¶¶ 8-19 [hereinafter "Pl.'s Compl."]

Prior to the incident at issue, plaintiff and his wife, Amy Trethewey, had been residing at the Days Inn Hotel in Flint, Michigan. Defendants were aware of plaintiff's residence at the time and assembled around 9:00 a.m. on June 13 to take plaintiff into custody in response to his absconder status. However, soon after defendants arrived at the hotel, plaintiff and his wife left the hotel in their pickup truck. Mrs. Trethewey and plaintiff were going to the nearby Bingo Hall where they worked. Mrs. Trethewey was driving plaintiff's vehicle; defendants were familiar with the truck and knew it belonged to plaintiff. While stopped at a traffic light,

3

defendant Stimac pulled his vehicle alongside plaintiff's pickup and raised his middle finger at the Tretheweys. Unaware that defendant Stimac was a police officer, one or both of the Tretheweys responded in a similar fashion. After this brief interaction, defendant Stimac continued to follow plaintiff and his wife. At that time, defendant Binns was following defendant Stimac who also updated defendant Jones on their route of travel. Defendants Jones and Vaughn drove to catch up to the other two officers. *Id*., ¶¶ 20-23.

Soon after, defendant Stimac drove onto the right shoulder, passed the pickup, and stopped his vehicle in the path of plaintiff. This action forced Mrs. Trethewey to bring the pickup to an abrupt stop. Once stopped, plaintiff started to get out of the car to confront defendant Stimac, but as he did so, he noticed that Stimac was pointing a gun at him and was yelling something that he could not understand. Upon seeing the weapon, plaintiff and Amy Trethewey returned to the pickup to drive away. While driving, defendant Jones drove up alongside the pickup and plaintiff saw a gun in his hand while he waved and pointed the weapon at the Tretheweys. With defendant Jones alongside the Tretheweys' pickup, defendant Stimac took a position directly in front of the pickup. *Id*., ¶¶ 28. Seeing the gun pointed at her, Mrs. Trethewey took her hands of the steering wheel and covered her face, forcing plaintiff to take control of the vehicle. After regaining composure, Mrs. Trethewey noticed the state police car driven by defendant Vaughn and told plaintiff that she thought it was the police; however plaintiff asserts that he did not believe the pursuing cars to be the police at that time. *Id*., ¶¶ 24-35.

The patrol car driven by defendant Vaughn then intentionally struck the pickup with his police car in an action known as a "pit" maneuver. This forced the pickup around and brought the vehicle to a stop. With the Tretheweys' vehicle boxed in by the pursuing vehicles, defendant

Stimac went to the passenger door of the pickup and, according to plaintiff, delivered a closed fist blow to plaintiff's right eye. Jones then joined Stimac and delivered four or five additional blows to plaintiff's face and head with a closed fist. Jones and Stimac may have also delivered kicks and/or knee strikes to plaintiff's torso and head. Defendant Binns then forced plaintiff onto the pavement and allegedly also delivered blows to his upper body and/or head with a closed fist. Defendant Vaughn then pinned plaintiff onto the ground making it difficult for him to breathe. During this period, plaintiff suffered a momentary loss of consciousness, but Mrs. Trethewey heard her husband pleading with the defendants to stop hitting him. She also asserts that her husband repeatedly asked the defendants who they were. *Id.*, ¶¶ 36-46.

After being handcuffed, plaintiff was lifted up from the ground leaving a one-foot diameter pool of blood on the pavement. Plaintiff was then placed face down on the hood of the patrol car, but witnesses attest he was quickly thrown back down to the ground at least once. Plaintiff asserts that he was not resisting arrest at this time. *Id*. Around this time a uniformed Clayton Township police officer happened on the scene and called an ambulance at the request of one of the defendants. This officer also explained that she had to secure identification from defendant Stimac, as she believed that there was nothing about him or his attire that readily identified him as a police officer. Plaintiff was treated onsite by an EMT upon arrival and then transported to Hurley Hospital for further care. At that time it was determined that plaintiff was intoxicated. Plaintiff was then brought to the Jackson prison facility where he was immediately taken to the onsite Duane Waters Hospital. He remained there for 22 days. Plaintiff was then moved around various prison facilities before being released on parole on July 28, 2008. Since the incident on June 13, 2007, plaintiff has suffered seizures and requires medical and mental health treatment. *Id.*, ¶¶ 47-62.

5

C. *Standard of Review for Summary Judgment*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hendrick v. Western Reserve Care Sys.*, 355 F. 3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hendrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hendrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F. 3d at 613.

D.  *Plaintiff's Excessive Force Claim*

Plaintiff claims that the defendants used excessive force in effectuating his arrest, in violation of the Fourth Amendment.

    1.  *Legal Standard*

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S CONST. amend. IV. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that all claims involving police officers and their use of excessive force in effectuating an arrest should be analyzed under the Fourth Amendment. Additionally, in analyzing such a claim, the court should apply a standard of objective reasonableness. *Id*. at 395-96. This test,

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

7

*Id*. at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* A plaintiff also does not need to suffer serious or permanent injury to prove excessive force. However, there must be more force than "the mere technical battery that is inextricably a part of any arrest." *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001) (Gadola, J.).

"Whether the amount of force used was reasonable is normally a question of fact to be determined by the jury." *Parker v. City of Santa Clara*, No. C-93-20362 RMW, 1995 WL 437728, at *3 (N.D. Cal. July 17, 1995); *see also, Kelly v. Bender*, 23 F.3d 1328, 1331 (8th Cir. 1994); *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991); *Pyka v. Village of Orland Park*, 906 F. Supp. 1196, 1225-26 (N.D. Ill. 1995); *Habiger v. City of Fargo*, 905 F. Supp. 709, 721 (D.N.D. 1995); *Fournier v. Joyce*, 735 F. Supp. 989, 993-94 (D. Me. 1990). Nevertheless, summary judgment is appropriate where the plaintiff fails to offer any evidence that the officer used force or if, accepting the plaintiff's version of events, no reasonable jury could conclude that the officer's use of force was unreasonable. *See Landy v. Irizarry*, 884 F. Supp. 788, 798 (S.D.N.Y. 1995) (citing cases). Additionally, in determining a seizure's reasonableness, or in this case, use of force, the Court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests with the importance of the government's interests that lead to the intrusion. *Scott v. Harris,* 550 U.S. 372, 373 (2007) (citing *United States v. Place*, 462 U.S. 696, 703 (1983)).

    2.    *Whether Defendants Binns and Stimac Used Excessive Force*

When taken in the light most favorable to the plaintiff, the evidence establishes that defendant Binns placed his hands on plaintiff's shoulders and forced his body down onto the pavement. Additionally, defendant Binns also delivered blows to plaintiff's upper body, and/or

head, with a closed fist. *See* Pl.'s Resp. to Def. Binns's Mot. For Summary J., Ex. 8, Dep. Tr. of Michael Trethewey, at 152-53. Defendant Binns admits that he held plaintiff's shoulders while the other officers were handcuffing him. *See id.*, Ex. 3, Dep. Tr. of Jeffrey Binns, at 174-76. While he asserts that plaintiff was refusing to obey direct commands by the officers and was struggling to resist being handcuffed, plaintiff has presented evidence that Binns struck him after he had been subdued and handcuffed. *See id.*, Ex. 8, at 124-25, 152-54.

Similarly, the evidence establishes that defendant Stimac, in conjunction with defendant Jones, delivered four to five blows to plaintiff's face and head with a closed fist. Plaintiff additionally claims that defendant Stimac also delivered kicks and knee strikes to plaintiff's body. *Id.*, at 118-25. After being brought to the ground, defendant Stimac admits to having jabbed plaintiff several more times. *See id.*, Ex. 9, Dep. Tr. of Shawn Stimac, at 130-31. Defendant Stimac and plaintiff disagree as to whether plaintiff had been subdued at that point in time, but plaintiff has presented evidence that he was in fact subdued. *See id.*, Ex. 8, at 124-25, 152-54. Plaintiff's testimony that defendants continued to strike him is sufficient to raise a question of fact regarding whether the defendants used excessive force under the circumstances. *Leary v. City of Pontiac*, 2008 WL 718287, at *5 (E.D. Mich. 2008) (Roberts, J.) (citing *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002)). As the Sixth Circuit has explained, "[i]t is well established in this circuit that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Bultema v. Benzie County*, 146 Fed. Appx. 28, 35 (6th Cir. 2005).

The question of whether an officer used reasonable force is usually a question of fact for the jury to decide, and given the significant issues of material fact present in this case, the Court should deny defendants' motions for summary judgment. Because of these issues, a reasonable

jury could find that defendants used excessive force against plaintiff. The three factors outlined in *Graham* further support my conclusion that a jury should determine this matter. The crime for which plaintiff was being arrested was not a crime of violence. Plaintiff had allegedly breached a requirement of his parole, which is considered a technical violation. Furthermore, the underlying crime for which plaintiff had been convicted – attempted larceny by conversion – was a non-violent property crime. Additionally, this parole violation, though of course illegal and subjected plaintiff to further imprisonment, posed no imminent danger to the community. Finally, though there is some evidence that plaintiff attempted to evade arrest by driving away, a jury might find that plaintiff was unaware that the pursuing defendants were police officers. Three of the four pursuing vehicles were unmarked and there is disputed evidence as to whether the marked vehicle was utilizing its lights. Pl.'s Br., Ex. 7, Dep. Tr. of Amy Trethewey, at 97. I recognize that this must be considered from the perspective of the officer and whether his belief was reasonable that plaintiff was attempting to evade arrest. *Graham*, 490 U.S. at 396. However, it may not have been reasonable for an unmarked officer to assume that his target was aware that he was being pursued by a police officer. Defendants Binns and Stimac may point to plaintiff's volatile history as justification for the force that was used. While plaintiff's history would favor defendants, a jury should determine whether this was enough to find defendants' actions to be reasonable.

It is also possible that reasonable jurors could disagree over the amount of force used by defendants against the plaintiff. Though plaintiff was admittedly unclear on some of the precise details of the events, his testimony that he was shoved to the ground violently, subdued by handcuffs, and received closed-fist punches is sufficient to raise a question of fact regarding the reasonableness of force.

The Supreme Court explained in *Graham* that, "[n]ot every push or shove, even if it may later seem unnecessary, in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation omitted). In the present situation it appears that defendants' conduct may have gone beyond a mere "push or shove." Given that the amount of force may have been significant, did lead to injury, *see* Pl.'s Br., Exs. 1-2, and that plaintiff was not being arrested for a serious crime, the Court should hold that there is a genuine issue of material fact with respect to whether the amount of force used by defendants Binns and Stimac was excessive, and should deny defendant's motion for summary judgment with respect to this claim. This determination would be consistent with the rulings of this Court, as well as others. *See, Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) (court found a Fourth Amendment violation where defendant officer allegedly continued to beat plaintiff after being subdued.); *Leary*, 2008 WL 718287, *5; *Kies ex rel. Kies v. City of Lima, Ohio*, 612 F.Supp. 2d 888, 900 (N.D. Ohio, 2009).

3.   *Whether Defendant Stimac has Qualified Immunity*

A governmental official in an excessive force case may use qualified immunity as a defense against a lawsuit. This defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). In determining whether an individual is entitled to qualified immunity, it must first be determined whether the alleged facts "show the officer's conduct violated a constitutional right. [I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." Finally, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001). In this particular context, a right is clearly established when the unlawfulness of the act at issue is apparent in light of existing law. *Cherrington v. Skeeter*, 344 F.3d 631, 640 (6th Cir. 2003). The Sixth Circuit Court of Appeals has further outlined the qualified immunity test into three parts: (1) "whether a constitutional right was violated, (2) whether that right was clearly established and one of which a reasonable person would have known, and (3) whether the official's action was objectively unreasonable under the circumstances." *Harris v. Bornhorst*, 513 F.3d 685, 691 (6th Cir. 2008) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). Additionally, the defense acts as an immunity from a suit rather than a defense to liability and is lost if a case is permitted to go to trial, even if it is erroneously done so. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The right that is allegedly being violated may not be asserted at a high level of generality, but instead, "must have been 'clearly established' in a more particularized, and hence relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gean v. Hattaway*, 330 F.3d 758, 767 (6th Cir. 2003).

In the recent case of *Pearson v. Callahan*, the Supreme Court removed some of the rigidity found in the qualified immunity standard as outlined in *Saucier*. The Court explained that the *Saucier* protocol should no longer be regarded as mandatory in all cases, and that district court and court of appeals judges should be allowed to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Despite the Supreme Court's apparent retreat from the *Saucier* standard in *Pearson*, it simultaneously recognized the inherent beneficial nature of the standard, implying that it still

deems it to be useful in determining whether an official is able to obtain a qualified immunity defense. *Id.*

In this case, defendant Stimac is not entitled to qualified immunity after taking the facts in a light most favorable to plaintiff. The first step in determining whether a defendant is entitled to qualified immunity is whether the constitutional right at issue was clearly established and one of which a reasonable person would have known. The Fourth Amendment protection from excessive force is an established and well-known right. If the facts show defendant Stimac violated this right, the first requirement for overcoming a qualified immunity defense is fully met. Specifically, it has been established that officers punching arrestees with closed hand fists and kicking them when he is subdued can be a Fourth Amendment violation. *Leary*, 2008 WL 718287, at *5. Indeed, the Sixth Circuit has noted that since at least 1988, "[i]t is well established in this circuit that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Bultema*, 146 Fed. Appx. at 35 (citing *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)). If it is found that plaintiff was no longer resisting any arrest, it would be unreasonable for an officer to continue using such a level of force and defendant Stimac should have known that he was violating a clearly established constitutional right.

Finally, to determine whether defendant Stimac should enjoy a qualified immunity defense, it must be determined if he was acting reasonably under the circumstances. While plaintiff did have a history of violence and made some attempt to evade the defendants, the force used could be found by a jury to be excessive given that plaintiff was not posing any risk to himself or others and was only being arrested for a technical violation of his parole. Though defendant Stimac may have had greater latitude with regards to reasonability because of

plaintiff's history, according to the facts in the light most favorable to the plaintiff, the blows and kicks from Stimac continued well after plaintiff had been subdued. Additionally, the actions by defendants were enough to lead to serious injuries that have had lasting effects for the plaintiff. Even accounting for the deference towards the split second decisions that police officers have to make, as outlined in *Graham,* 490 U.S. at 396-397, at the moment of the incident there was more then enough time for the officers to realize that their level of force may have been excessive to the point of being unreasonable and certainly poses a question of material fact. Therefore, the presence of such issues of material fact show that defendant Stimac is not entitled to a defense of qualified immunity.

E.   *Plaintiff's State Law Claims – Whether Defendant Stimac has Governmental Immunity*

Defendant Stimac also argues that he is entitled to governmental immunity, and thus to summary judgment, on plaintiff's state law claims. Plaintiff's state claims are subject only to state law immunities. *See Napolitano v. Flynn*, 949 F.2d 617, 620-21 (2d Cir. 1991); *Lenior v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1089 (6th Cir. 1978). *See generally*, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). As relevant to defendant's argument, the Michigan governmental immunity statute provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . if all of the following are met:
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS § 691.1407(2). The statute goes on to provide that "[s]ubsection (2) does

not alter the law of intentional torts as it existed before July 7, 1986." *Id*. § 691.1407(3). Under the statute, "'[g]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id*. § 691.1407(7)(a).

Because assault constitutes an intentional tort, § 691.1407 does not provide immunity from suit based on a claim of assault. Of course, not every action which might constitute an assault when done by a private party will constitute an assault when committed by a law enforcement officer effectuating an arrest. As another Judge of this Court has explained the operation of § 691.1407 in these circumstances:

> Prior to the effective date of subsection (2), governmental immunity generally was not available as a defense to an intentional tort claim. *Sudul v. Hamtramck*, 221 Mich.App. 455, 458, 562 N.W.2d 478 (1997). However, "[g]overnmental actions which would normally constitute intentional torts [were] protected by governmental immunity if those actions [were] justified." *Brewer v. Perrin*, 132 Mich.App. 520, 528, 349 N.W.2d 198, 202 (Mich.Ct.App.1984); *Burns v. Malak*, 897 F.Supp. 985 (E.D.Mich.1995). As the Michigan Court of Appeals explained in Brewer, justifiable actions are those "which an ordinarily prudent and intelligent person with the knowledge and in the situation of the [ ] officer, would have deemed necessary." 132 Mich.App. at 528, 349 N.W.2d at 202 (internal citations and quotation marks omitted); see also *Vanvorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132, 142 (2004). Thus, for example, under Michigan law a police officer is immune from tort liability for injuries caused during an arrest if the officer used reasonable force when making the arrest. *Id*.

*Slusher v. Carson*, 488 F. Supp. 2d 631, 641 (E.D. Mich. 2007) (Duggan, J.); *see also*, *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 481-82, 562 N.W.2d 478, 488-89 (1997) (Murphy, P.J., concurring in part and dissenting in part) (citing cases).

In other words, an officer is entitled to immunity from tort liability for injuries caused by the use of reasonable force when making an arrest and is not entitled to immunity for injuries caused by the use of unreasonable force. *See Jones v. Powell*, 462 Mich. 329, 334, 612 N.W.2d 423, 425 (2000) (citing *Blackman v. Cooper*, 89 Mich. App. 639, 643, 280 N.W.2d 620, 622 (1979)) ("[I]t is clear that individual government employees cannot seek immunity for their

15

intentional torts."); *Blackman*, 89 Mich. App. at 643, 280 N.W2d at 622 (a claim that a police officer "assaulted, battered and used excessive force upon plaintiff . . . enjoys no such common-law freedom or immunity from tort liability."). Thus, the immunity question in a case such as this essentially merges with the Fourth Amendment claim. *Cf. Hall v. Township of Mount Morris*, 198 F. Supp. 2d 906, 919, 920 (E.D. Mich. 2002) (Hood, J.); *VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W.2d 132, 142 (2004) (prior federal court adjudication finding that defendants had not used excessive force under Fourth Amendment collaterally estopped plaintiff from showing that defendants' were not entitled to immunity on state law claims).

Defendant Stimac, recognizing this, argues that he is entitled to governmental immunity on the state law claims because plaintiff cannot survive summary judgment on the Fourth Amendment claim. *See* Br. in Supp. of Def. Stimac's Mot. for Summ. J., at 9 ("Because the federal claim cannot survive, neither can a claim for assault and battery."); *id*. ("Thus, for the same reasons that Stimac is entitled to summary judgment on the Fourth Amendment claims, he is entitled to summary judgment on the state assault and battery claim as well."). As noted above, however, defendant Stimac is not entitled to summary judgment on plaintiff's Fourth Amendment excessive force claim, and therefore there remains a genuine issue of material fact with respect to whether defendant Stimac used reasonable force in effectuating the arrest such that he would be entitled to immunity under § 691.1407. Accordingly, the Court should conclude that defendant Stimac is not entitled to summary judgment on plaintiff's state law assault and battery claims.

F.   *Plaintiff's State Law Claims – Supplemental Jurisdiction*

In addition to his Fourth Amendment claim, plaintiff's complaint also asserts state law claims of assault, battery, and gross negligence. Defendants Jones and Vaughn seek dismissal of

these claims, arguing that the Court should decline to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367 provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Plaintiff's state law claims were brought about in response to the same actions that led to his Fourth Amendment excessive force claim. Because all the claims are based on the same incident, the state claims arise out of the same case or controversy, which should allow for supplemental jurisdiction. Beyond what is codified, courts do enjoy broad discretion on whether to exercise their supplemental jurisdiction over state claims. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-173 (1997). To determine whether to exercise supplemental jurisdiction, courts should look to "considerations of judicial economy, convenience, and fairness to litigants," while avoiding needless decisions of state law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Because the state and federal issues at hand in the present case are so closely related, it would be in the best interest of judicial economy for the Court to take supplemental jurisdiction on the state issues. Similarly, by avoiding the need for multiple trials, supplemental jurisdiction would serve the convenience of the involved parties. Finally, there does not seem to be a legitimate argument that supplemental jurisdiction would lead to an unfair trial for any of the involved parties. Defendants attempt to argue that the state and federal claims themselves have different standards, and as such are irreconcilable and should not be determined at the same time. However, the presence of different elements between the state and federal claims in no way

interferes with the Court's ability to make a fair and accurate ruling and should not be a bar to its exercise of supplemental jurisdiction. Accordingly, there is no valid reason that should lead the Court to refuse to exercise supplemental jurisdiction.

G.  *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has shown genuine issues of material fact with respect to whether defendants Stimac and Binns utilized excessive force while effectuating plaintiff's arrest. Accordingly, the Court should deny defendants' motions for summary judgment. Also, because there may have been a violation of a clearly established constitutional right and because his actions may have been unreasonable, the Court should not grant defendant Stimac his qualified immunity or governmental immunity defenses. Additionally, because the federal and state claims arise out of the same case or controversy the Court should exercise supplemental jurisdiction over the state law claims, and should deny defendants Jones's and Vaughn's motion to dismiss.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.

1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 8/9/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on August 9, 2010.
>
> s/Eddrey Butts  
> Case Manager